IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| PAOLO PENARRIETA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11-cv-910 (AJT/IDD) |
| | ) | |
| UNITED STATES CITIZENSHIP, | ) | |
| AND IMMIGRATION SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Motion to Dismiss [Doc. No. 3] and also Motion

for Summary Judgment [Doc. No. 4] filed by the respondent United States Citizenship and

Immigration Services ("USCIS") with respect to the Petition for Review filed by petitioner Paolo

Penarrieta ("Penarrieta"). Penarrieta was denied an application for citizenship because he was

deemed to lack "good moral character" due to a Virginia state embezzlement conviction in 2003.

Penarrieta has appealed that decision to this Court. For reasons stated below, the Court denies

the government's motions and grants summary judgment in favor of Penarrieta.

### Jurisdiction and Standard of Review

When USCIS denies an application for naturalization after a hearing before an

immigration officer, an individual may seek review of that denial in the United States District

Court within which the individual resides. 8 U.S.C. § 1421(c). Here, USCIS initially denied

Penarrieta's application on December 11, 2009 and he timely filed a request for a hearing on

January 13, 2010. On July 26, 2011, USCIS, after that hearing, again denied his application.

Because an immigration officer has ruled on the application, this Court has jurisdiction under 8

1

U.S.C. § 1421(c). Under 8 U.S.C. § 1421(c), the Court reviews the record *de novo* and where the facts are not materially in dispute, as they are not here, "summary judgment is the appropriate vehicle for review of USCIS's decision." *Dung Phan v. Holder*, 722 F. Supp. 2d 659, 661 (E.D. Va. 2010). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).

## Discussion

The facts of this case are not in dispute: Penarrieta worked as a sales representative at Sears in the store's electronics department in 2003. Gov't's Ex. B, p. 3. While working as a sales representative, he executed a false cash transaction for a $1,000 television. *Id.* Under cover of the false transaction, he allowed a friend to take the television from the store without paying for it. *Id.* Penarrieta pled guilty to embezzlement under Va. Code. 18.2-111 on August 6, 2003. The sole issue in this case is whether USCIS correctly concluded that Penarrieta's embezzlement conviction precludes him from becoming a U.S. citizen.

A person must possess "good moral character" to become a naturalized citizen. 8 U.S.C. § 1427(a)(3). If an applicant has been convicted of an "aggravated felony," as defined by 8 U.S.C. § 1101(a)(43), then the applicant lacks "good moral character." 8 C.F.R. § 316.10(b)(1)(ii). The list of aggravated felonies under that statute is extensive, but USCIS denied Penarrieta's application only on the grounds that his embezzlement conviction qualified as an aggravated felony because it was "a theft offense (including receipt of stolen property) or burglary for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). USCIS's conclusion that Penarrieta's embezzlement offense is a "theft offense" rather than a "fraud offense," as Penarrieta claims, was dispositive with respect to his application since a "theft offense" is an aggravated felony and a "fraud offense" is not unless the victim's loss is

2

over $10,000. 8 U.S.C. § 1101(a)(43)(M)(i). Because the loss amount that led to Penarrieta's conviction for embezzlement was $1,000, Penarrieta's embezzlement conviction would not constitute a "fraud offense" that qualifies as a aggravated felony.

### Categorical Analysis Approach

In examining whether a state court conviction qualifies as an aggravated felony, the Court must utilize the "categorical analysis approach spelled out in *Taylor v. United States*." *Soliman v. Gonzales*, 419 F.3d 276, 284 (4th Cir. 2005) (citing *Taylor v. United States*, 495 U.S. 575, 598-600 (1990)). In order to do so, the Court must first determine a "generic" definition of the enumerated offense based on how the offense is defined "in the criminal codes of most states." *United States v. Peterson*, 629 F.3d 432, 436 (4th Cir. 2011). Second, the Court must determine whether the predicate state conviction, here, Penarrieta's embezzlement conviction, would also constitute a conviction of the "generic" offense. *Id.* When comparing the predicate offense to the "generic" offense, the "determination is made categorically, not by comparing the petitioner's prior conduct with the generic offense, but rather by comparing the *elements* of the crime of conviction with the generic offense." *Id.* (emphasis in original).

In conducting this analysis, the Court initially must look "only to the statutory definitions of the prior offenses, and not the particular facts underlying those convictions." *Id.* (quoting *Taylor,* 495 U.S. at 600). A court can look beyond the particular state conviction at issue only if the state statute defining the elements of that state offense may, but does not necessarily, include all of the elements of the generic offense. *Soliman,* 419 F.3d at 284. However, this step, dubbed the "modified categorical approach," is not a license to consult the underlying facts of the case. *Id.* Rather, a court can only "look to the indictment (or information) and similar documents for the state law offense, and assess whether the state court, in adjudging guilt, was required to find

3

the elements of theft as required by federal law." *Id.* (citing *Shepard v. United States,* 544 U.S. 13 (2005); *Taylor,* 495 U.S. at 602). If the court still cannot determine whether the predicate offense satisfied the elements of the "generic" offense, then the court must find for the defendant. *United States v. Vann,* 660 F.3d 771, 776-77 (4th Cir. 2011) (en banc) (holding that the conviction did not qualify as the generic offense because the court could not definitively determine whether the underlying conduct supported the generic elements).

In this Circuit, the generic "theft offense" is defined as "(1) a taking; (2) of property; (3) from its owner or his representative; (4) without that person's consent; (5) with intent to deprive the owner to the benefit of the thief." *Soliman,* 419 F.3d at 282; Gov't's Br. 5; Pet'r's Br. 4. The statutory elements of embezzlement in Virginia are set forth in Va. Code. § 18.2-111, which states:

> If any person (1) wrongfully and fraudulently (2) use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, (3) which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted or delivered to him by another or by any court, corporation or company, he shall be guilty of embezzlement.

(numbers added).

The dispositive issue is whether Penarrieta's conviction under the Virginia embezzlement statute necessarily satisfied all the elements of the generic "theft offense." That issue reduces to whether the elements of Virginia's embezzlement statute necessarily include the taking of property without an owner's "consent," as required for commission of the generic theft offense.

The Fourth Circuit's consideration in *Soliman* of the consent element within a fraud offense is instructive for the purposes of this case. There, the petitioner was

4

convicted of Fraudulent Use of a Credit Card because she represented that she was the holder of a card when making $200 in purchases. *Soliman*, 419 F.3d at 278.  As in this case, the Court had to determine whether the Fraudulent Use of a Credit Card was a "theft offense" or a "fraud offense."  The Court held that the key, and essentially only, distinction between a theft and a fraud was whether the owner of the misappropriated property had given a defendant "consent" to own or possess the property:

> When a theft offense has occurred, property has been obtained from its owner "without consent"; in a fraud scheme, the owner has voluntarily "surrendered" his property, because of an "intentional perversion of truth," or otherwise "act[ed] upon" a false representation of his injury.  The key and controlling distinction between these two crimes is therefore the "consent" element—theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained.

*Id.* at 282.  In other words, the "taking of property 'without consent' is an essential element of a theft offense" while in a fraud offense the taking is with the owner's consent, albeit consent that is wrongfully obtained. *Id.* at 283.

The government essentially argues that Penarrieta's embezzlement conviction necessarily established that he took property "without consent," since when a defendant "wrongfully and fraudulently" uses or disposes of property, he uses the property in a manner inconsistent with the owner's consent, trust, office, or terms of employment that placed the property within his possession initially; therefore, an embezzlement is a taking "without consent."  Penarrieta argues that the consent element must be determined within the context of how the defendant first obtained possession of the property.  Only if Virginia's embezzlement statute requires that the defendant's initial possession be without consent of the owner is the "consent" element of the generic theft offense satisfied.  Under that standard, Penarrieta argues that Virginia's embezzlement statute has no such requirement and in fact is explicitly premised on the

embezzled property initially coming into a defendant's possession lawfully and with the consent of the owner; and the embezzlement conviction does not necessarily satisfy all the elements of the generic theft offense.

In evaluating whether an embezzlement occurs with or without the owner's consent, *Soliman* requires that the Court look to the Virginia statute, and not an abstract version of embezzlement. *Soliman*, 419 F.3d at 279. The statute itself does not reference "consent," but it does require that the embezzler "wrongfully and fraudulently" use the property which has been entrusted to him. Va. Code. § 18.2-111. Black's Law Dictionary defines "fraud" as "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." BLACK'S LAW DICTIONARY 731 (9th ed. 2009). As the Fourth Circuit explained in *Soliman*, a fraud occurs when "the owner has *voluntarily* 'surrendered' his property, because of an 'intentional perversion of truth.'" *Soliman*, 419 F.2d at 282 (emphasis added). Because the embezzlement statute requires that a fraud be perpetrated, and a "fraud" is perpetrated with the victim's consent, expressed or implied, the embezzlement statute requires, in effect, that the crime be committed with the victim's consent.

The government appears to concede that the embezzlement statute requires that a defendant initially comes into possession of the embezzled property through some form of consent, but appears to argue that the subsequent disposition of the property "wrongfully and fraudulently" satisfies the generic theft offense's requirement that the property be taken without consent. However, the government's position ignores that in order for property to be disposed of "fraudulently," there must be some element of consent by the owner, albeit consent fraudulently obtained. As such, a conviction for embezzlement in Virginia does not qualify as a "theft offense" because the generic definition of a "theft offense" requires that the taking be "without

6

the owner's consent." This conclusion is supported by *Smith v. Commonwealth,* where the

Supreme Court of Virginia explained:

> A person who takes personal property from the possession of another without the
> owner's consent and with intent to deprive him of possession permanently is
> guilty of common law larceny.  A person entrusted with possession of another's
> personality who converts such property to his own use or benefit is guilty of the
> statutory offense of embezzlement.

222 Va. 646, 649 (1981) (internal citations omitted).  In a larceny, a taking "without the

owner's consent" is a central element of the offense.  By contrast, "entrustment," which

implicitly comes with the owner's consent, is a central element of an embezzlement

offense.[1]  Thus, because the embezzlement statute requires the defendant to

"fraudulently" use or dispose of the property, the defendant must obtain the owner's

consent in order to commit the requisite fraud embedded in the statute.  For these reasons,

the Virginia statute for embezzlement does not satisfy the elements of the generic "theft

offense," as defined by the Fourth Circuit.

*Modified Categorical Approach*

      In determining the elements of Virginia's embezzlement statute, this Court is bound by

the highest state court's interpretation of state law. *Johnson v. United States*, 130 S. Ct. 1265,

1269-70 (2010).  However, the Supreme Court of Virginia has variously stated the elements of

embezzlement and, in some instances, has stated only that a person must "wrongfully"

misappropriate property, rather than "wrongly and fraudulently," in order to commit an

---

[1] The government characterizes this interpretation as a logical fallacy: "If the accused acted with
the owner's consent in the appropriation, then the accused would not have committed a crime."
Gov't's Br 7.  The government's argument ignores the basic premise of a "fraud."  The
defendant, of course, does not have the owner's actual consent *to commit the fraud*; the victim of
a fraud is not aware that he is being duped.  It is enough that the victim gives his consent to what
occurs, though unaware of the true consequences of his consent.

7

embezzlement offense.[2] Based on this case law, the Court assumes, without deciding, that a person may violate the Virginia embezzlement statute by initially obtaining possession of property with the owner's consent, and then subsequently disposing of that property without the owner's consent, and that this subsequent disposition would satisfy the "wrongful" requirement of the embezzlement statute. In other words, under this construction of the statute, a person can "wrongfully" dispose of such property initially obtained lawfully, and this subsequent "wrongful" disposition does not have to be "fraudulent" to qualify as an embezzlement. However, even under that construction, a "wrongful" disposition of property could be effected by nothing other than "fraudulent" conduct. Accordingly, under this construction of the embezzlement statute, Penarrieta's embezzlement conviction may or may not have involved conduct encompassed by the generic theft offense. The Court will therefore alternatively consider under the "modified categorical approach" whether Penarrieta's embezzlement conviction constitutes a conviction for the generic theft offense. *Soliman*, 419 F.3d at 285.

As stated above, under the modified generic approach, if the Court concludes that Penarrieta's conviction for embezzlement might encompass conduct that could, but does not

---

[2] For example, in *Webb v. Commonwealth*, the Supreme Court of Virginia explained that embezzlement requires a showing that "an accused wrongfully appropriated to his own use or benefit, with the intent to deprive the owner thereof, the property of another which has been entrusted to him by reason of his employment or office." 204 Va. 24, 30 (1963). Likewise, in *Evans v. Commonwealth*, the Supreme Court explained that embezzlement requires that "[a] person entrusted with possession of another's personality who converts such property to his own use or benefit is guilty of the statutory offense of embezzlement." 226 Va. 292, 297 (1983). Both of these interpretations omit the word "fraudulently." However, in *Stegall v. Commonwealth*, the Supreme Court repeats the "wrongful and fraudulent" requirement several times throughout its opinion. 208 Va. 719, 721-22 (1968). And, albeit in a different context, the Fourth Circuit has held that under Virginia law "[t]here is no question, and we do not contend otherwise, that embezzlement is a felony *involving* dishonesty, fraud, and misrepresentations." *United States v. Good*, 326 F.3d 589, 592 (4th Cir. 2003) (emphasis in original). In *Good*, the Fourth Circuit specifically distinguished embezzlement and larceny as separate offenses with separate elements under Virginia law. *Id.* at 592 n.5.

necessarily, satisfy the elements of a "theft offense," then the Court can look "beyond the mere fact of [the] state conviction [] to examine the charging papers and similar documents in the state court [] to assess what [the defendant's] conviction necessarily relied upon." *Id.* (internal quotations omitted).[3] However, if those documents still do not provide a definitive answer, then the Court is required to find for the petitioner. *Vann*, 660 F.3d at 776-77.

The only documents the government provided in support of its motions were the initial USCIS letter denying Penarrieta's application and the subsequent "Decision on a Hearing on a Decision in Naturalization Proceedings." Gov't's Exs. A-B. The Court cannot consult these documents under the "modified categorical approach." *See Shepard*, 544 U.S. at 26. However, Penarrieta provided his guilty plea and his sentencing order in his opposition, which the Court may consider. *See* Pet'r's Exs. A-B. The guilty plea states, in pertinent part, that "[t]he Court accepted the plea of guilty and made it a part of the record after making specific inquiries of the Defendant and determining that the plea was made voluntarily and with full understanding of the nature and consequences of the plea." Pet'r's Ex. A. The court did not identify what "specific inquiries" it made or any facts that it relied on to support the conviction; the plea merely states that Penarrieta committed the crime of "embezzlement" without further elaboration. The sentencing order is likewise devoid of any facts that could establish that the underlying criminal activity amounted to a "theft offense." Pet'r's Ex. B. Without more, the Court cannot determine the specific conduct that resulted in the embezzlement conviction.[4] For these reasons, even under the "modified categorical approach," the Court must rule in favor of Penarrieta.

---

[3] The court "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26.

9

Although Penarrieta has not filed a cross-motion for summary judgment seeking a decision in his favor, the record is complete on the dispositive issue whether his conviction is a "theft offense." As such, the Court declares as a matter of law, *sua sponte*, that USCIS improperly denied his application for citizenship on the ground that his embezzlement conviction was a "theft offense," and therefore an aggravated felony that precluded his qualifying for citizenship. *See Builders Mut. Ins. Co. v. Parallel Design & Dev. Co.*, 785 F. Supp. 2d 535, 552 & n.9 (E.D. Va. 2011) (quoting *United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)) ("While Fed. R. Civ. P. 56 does not expressly provide that district courts may enter summary judgments sua sponte, there can be little doubt that district courts inherently possess that power.").

### Conclusion

For the above reasons, the Court denies USCIS's motion to dismiss or, in the alternative, motion for summary judgment [Doc. Nos. 3 and 4], grants judgment in favor of petitioner,

---

[4] This, of course, is a legal fiction. The Court is aware of the facts of the underlying embezzlement conviction based on the USCIS decision and the representations made at the hearing. Indeed, the USCIS Immigration Officer reached her decision, not by comparing, as required, the elements of embezzlement to the generic theft elements, but rather by evaluating whether Penarrieta's actual conduct qualified as a "theft offense." See Gov't's Ex. B, pp. 3-4. Nevertheless, even if the actual facts of this case could be relied upon, as the USCIS implicitly suggests in its briefings and argument, those facts demonstrate that the embezzlement occurred with the victim's consent, albeit fraudulently obtained, via the false sales transaction. As described by USCIS, Penarrieta executed a false cash transaction which permitted his friend to leave the store with the television; and based on those facts, USCIS explained to Penarrieta in its letter denying his application that "the transaction, which you later voided, *allowed* your friend to take the television set from the store without paying for it." Gov't's Ex. B, p. 3 (emphasis added). Under this recitation of the facts, Sears consented to the friend taking the television out of the store because Sears thought the friend had purchased it. That consent, however, was induced by the fake transaction—Sears "voluntarily surrendered" its property because of an "intentional perversion of truth."

vacates USCIS's decision denying petitioner's application for citizenship, and remands this case
to USCIS for proceedings consistent with this opinion.

       An appropriate Order will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 27, 2012

11